UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. 4:22-cv-925 |
| v. | ) | |
| | ) | |
| NATIVE LANDSCAPE SOLUTIONS, INC., | ) | COMPLAINT |
| | ) | |
| Defendant. | ) | |
| | ) | |

The United States of America, by the authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the U.S. Department of the Interior, National Park Service (NPS), files this Complaint and alleges as follows:

## NATURE OF ACTION

1.  This is a civil action against Defendant Native Landscape Solutions, Inc., under the System Unit Resource Protection Act (SURPA), 54 U.S.C. §§ 100721-100725, to recover response costs and damages resulting from Defendant's application of herbicide at the Ulysses S. Grant National Historic Site in St. Louis County, Missouri (hereinafter the Park).  Defendant's application of herbicide at the Park in 2016 destroyed, caused the loss of, and/or injured approximately 180 trees at the Park.

## JURISDICTION AND VENUE

2.  This Court has subject-matter jurisdiction over the United States' claim under 54 U.S.C. § 100723(a) and 28 U.S.C. §§ 1331 and 1345.

3.  Venue is proper in the Eastern District of Missouri under 28 U.S.C. § 1391(b) because Defendant resides in this District and the events at issue occurred in this District.

1

4. Authority to bring this action is vested in the U.S. Department of Justice under 28 U.S.C. §§ 516 and 519, and 54 U.S.C. § 100723(a).

## PARTIES

5. Plaintiff, the United States of America, is acting at the request of the NPS.

6. Defendant is a corporation organized under the laws of Missouri, with a principal office address at 9814 Gravois Road, St. Louis, MO 63123.

## STATUTORY BACKGROUND

7. SURPA provides that "any person that destroys, causes the loss of, or injures any System unit resource is liable to the United States for response costs and damages resulting from the destruction, loss, or injury." 54 U.S.C. § 100722(a).

8. In determining the meaning of any Act of Congress, the term "person" includes "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." 1 U.S.C. § 1.

9. SURPA defines a "System unit resource" as "any living or non-living resource that is located within the boundaries of a System unit." 54 U.S.C. § 100721(3)(A).

10. Title 54, which governs the NPS and related programs, defines a "System unit" of the National Park System as "any area of land and water administered by the Secretary [of the Interior] . . . for park, monument, historic, parkway, recreational, or other purposes." *Id.* §§ 100501, 100102(2), (6).

11. SURPA defines "response costs" as "the costs of actions taken by the Secretary [of the Interior] to—

(A) prevent or minimize destruction or loss of or injury to a System unit resource;

(B) abate or minimize the imminent risk of the destruction, loss, or injury; or

(C) monitor ongoing effects of incidents causing the destruction, loss, or injury." *Id.* § 100721(2).

12.  SURPA defines "damages" as:

"(A) compensation for--

(i)(I) the cost of replacing, restoring, or acquiring the equivalent of a System unit resource; and

(II) the value of any significant loss of use of a System unit resource pending its restoration or replacement or the acquisition of an equivalent resource; or

(ii) the value of the System unit resource if the System unit resource cannot be replaced or restored; and

(B) the cost of a damage assessment under section 100723(b) of this title." *Id.* § 100721(1).

## GENERAL ALLEGATIONS

### Ulysses S. Grant National Historic Site

13.  Congress established the Park on October 2, 1989, "to preserve and interpret for the benefit and inspiration of all Americans a key property associated with the life of General and later President Ulysses S. Grant and the life of First Lady Julia Dent Grant." Ulysses S. Grant National Historic Site, Pub. L. No. 101-106, 103 Stat. 677 (1989) (codified in the Notes of 54 U.S.C. § 320101).

14.  At all times relevant to this Complaint, the Secretary of the Interior administered the Park as a unit of the National Park System "for park, monument, historic, parkway, recreational, or other purposes" within the meaning of 54 U.S.C. §§ 100102 and 100501.

3

15. At all times relevant to this Complaint, the Park has been a "System unit" within the meaning of SURPA and 54 U.S.C. §§ 100102(6) and 100501.

### Contract to Remove Invasive Species and Herbicide Application at the Park

16. On February 2, 2016, Defendant signed a contract with the NPS to remove invasive species at the Park.

17. As part of its work to remove invasive species at the Park, Defendant applied the herbicide Garlon 3A (EPA Reg. No. 62719-37) at least once at the Park in June 2016.

18. As part of its work to remove invasive species at the Park, Defendant applied the herbicide Nufarm Polaris AC Complete (EPA Reg. No. 228-570) at least three times at the Park, in April and July 2016.

### Injury to Trees at the Park

19. In March 2017, Park staff noticed that many trees in the Park were not leafing out.

20. In April 2017, the Park hired DJM Ecological Services to visually inspect the trees. After visiting the Park, DJM Ecological Services informed Park staff that the trees might simply have delayed foliage.

21. In May 2017, Park staff contacted the Missouri Department of Agriculture, which sent an investigator to the Park to collect foliage samples from some of the trees that showed signs of injury, such as defoliation, stunted leaves, and other stress indicators.

22. Laboratory analysis of the foliage samples collected from the Park by the Missouri Department of Agriculture detected the presence of Triclopyr, the active ingredient in Garlon 3A, and Imazapyr, the active ingredient in Nufarm Polaris AC Complete.

23. In the summer of 2017, the NPS hired the Davey Resource Group to assess the damage to the trees at the Park.

24. In July 2017, the Davey Resource Group identified 177 injured trees at the Park, the majority of which appeared to be dying.

25. The Davey Resource Group visited the Park again in June 2018 to reassess the trees and identified three additional injured trees for a total of 180 injured trees. Again, the majority of the injured trees appeared to be dying.

26. The injured trees included at least 24 different tree species, including, but not limited to, black walnut, black cherry, flowering dogwood, silver maple, American sycamore, eastern cottonwood, northern catalpa, and green ash.

27. In the fall of 2018 and spring of 2019, the Davey Resource Group visited the Park several more times to help Park staff identify dead and dying trees for removal.

28. The NPS hired outside contractors to remove approximately 130 dead and dying trees between 2018 and 2021.

29. The NPS also hired outside contractors to prune injured trees to remove dead and dying branches between 2018 and 2021.

30. The NPS has continued to monitor the remaining injured trees at the Park. Some of these trees may die and need to be removed in the future.

31. The NPS plans to replace the approximately 130 injured trees that have already been removed, and any additional trees that have to be removed in the future as a result of Defendant's application of Garlon 3A and/or Nufarm Polaris AC Complete at the Park.

## CLAIM FOR RELIEF

### (System Unit Resource Protection Act)

32. The allegations in Paragraphs 1 through 31 are re-alleged and incorporated herein by reference.

5

33. Defendant is a "person" within the meaning of SURPA, 54 U.S.C. § 100722(a).

34. At all times relevant to this Complaint, the trees at the Park were each a "System unit resource" within the meaning of SURPA, 54 U.S.C. § 100721(3)(A).

35. Defendant's application of the herbicide Garlon 3A and/or Nufarm Polaris AC Complete at the Park destroyed, caused the loss of, and/or injured System unit resources at the Park within the meaning of SURPA, 54 U.S.C. § 100722(a), including approximately 180 trees.

36. At times relevant to this Complaint, the NPS took action to prevent or minimize destruction of, loss of, and/or injury to System unit resources that resulted from Defendant's application of Garlon 3A and/or Nufarm Polaris AC Complete at the Park.

37. At times relevant to this Complaint, the NPS took action to abate or minimize the imminent risk of the destruction, loss, and/or injury to System unit resources that resulted from Defendant's application of Garlon 3A and/or Nufarm Polaris AC Complete at the Park.

38. At times relevant to this Complaint, the NPS took action to assess the extent of, and to monitor the ongoing effects of, the destruction, loss, and/or injury to System unit resources that resulted from Defendant's application of Garlon 3A and/or Nufarm Polaris AC Complete at the Park.

39. The United States has already incurred and will continue to incur costs to restore injured System unit resources at the Park due to Defendant's application of Garlon 3A and/or Nufarm Polaris AC Complete.

40. The United States will incur costs to replace or acquire the equivalent of destroyed, lost, or injured System unit resources at the Park, including at least the approximately 130 injured, removed trees, due to Defendant's application of Garlon 3A and/or Nufarm Polaris AC Complete.

41. The United States has already incurred and will continue to incur damages from the lost use of System unit resources at the Park pending their restoration or replacement or the acquisition of equivalent resources due to Defendant's application of Garlon 3A and/or Nufarm Polaris AC Complete.

42. The United States has incurred costs to conduct a damage assessment under SURPA, 54 U.S.C. § 100723(b), due to Defendant's application of Garlon 3A and/or Nufarm Polaris AC Complete at the Park.

43. Defendant's application of Garlon 3A and/or Nufarm Polaris AC Complete at the Park has caused the United States to incur significant "response costs" and "damages" as those terms are defined by SURPA, 54 U.S.C. § 100721(1)-(2).

44. Under SURPA, 54 U.S.C. § 100722(a), Defendant is liable for all past and future response costs and damages resulting from the destruction of, loss of, and/or injury to System unit resources caused by Defendant's application of Garlon 3A and/or Nufarm Polaris AC Complete at the Park.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States, requests that this Court:

45. Enter judgment in favor of the United States and against Defendant for all response costs and damages in accordance with SURPA, 54 U.S.C. §§ 100721 to 100725; and

46. Grant the United States such other relief as this Court deems appropriate.

    Respectfully submitted,

    FOR THE UNITED STATES OF AMERICA:

    NATHANIEL DOUGLAS
    Deputy Chief

        Environmental Enforcement Section
        Environment and Natural Resources Division
        U.S. Department of Justice

        */s/ Genevieve Parshalle*
        GENEVIEVE PARSHALLE
        Trial Attorney
        Environmental Enforcement Section
        Environment and Natural Resources Division
        U.S. Department of Justice
        P.O. Box 7611
        Washington, DC 20044-7611
        Telephone: 202-514-2445
        Email: genevieve.parshalle@usdoj.gov
        307288 (CA)

OF COUNSEL:

AMY DUIN
U.S. Department of the Interior
Officer of the Solicitor
Rocky Mountain Region
755 Parfet Street, Suite 151
Lakewood, CO 80215